UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 3:CR-05-64 |
| | ) | |
| v. | ) | |
| | ) | (JUDGE VANASKIE) |
| LOUIS PAGNOTTI, III, | ) | |
| | ) | (ELECTRONICALLY FILED) |
| Defendant. | ) | |

**BRIEF OF UNITED STATES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE PERJURY INDICTMENT PURSUANT TO <u>FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(3)(B)</u>**

THOMAS A. MARINO
United States Attorney

GORDON A.D. ZUBROD
Assistant U.S. Attorney

I.  **<u>PROCEDURAL HISTORY</u>**

The defendant Louis Pagnotti, III was indicted by a federal grand jury sitting in Harrisburg, Pennsylvania on February 9, 2005.  The indictment charged the defendant and co-defendant Frank Pavlico, III in Count One with conspiracy to launder drug proceeds in violation of Title 18, United States Code, Section 1956(h).  Counts Five through Nineteen[1] charged the defendant Pagnotti with substantive acts of money laundering in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i): Count Twenty charged the defendant with misprision of a felony in violation of Title 18, United States Code, Section 4; Count Twenty-one alleged an obstruction of justice in violation of Title 18, United States Code, Section 1512(c)(1); Count Twenty-two sought the forfeiture of currency and assets derived from the unlawful drug activity.

The case was initially assigned to Senior Judge Edwin M. Kosik but, on February 22, 2005, Judge Kosik recused himself from the case.   The case was reassigned to Judge Vanaskie.

On May 17, 2006, a federal grand jury returned a Superseding Indictment against Louis Pagnotti, III, which, in addition to charging him with the counts

---

[1] Counts Two through Four charged Pavlico only.

previously set forth also charged him with a violation of Title 18, United States Code, Section 1623, perjury before a federal grand jury.

On September 20, 2006, a *Kastigar* hearing was held before Judge Vanaskie.

On October 10, 2006, undersigned counsel sent a letter to Judge Vanaskie and to opposing counsel reporting that the grand jury that handed down the Superseding Indictment was the same grand jury that had handed down the original Indictment and that the United States would be seeking a reindictment of the defendant before different grand juries.

On November 8, 2006, a second superseding indictment was handed down against Louis Pagnotti, III.[2] The second superseding indictment charged Pagnotti with all of the offenses set forth in the original indictment handed down on February 9, 2005. On November 14, 2006, a separate grand jury sitting in Scranton, Pennsylvania handed down a one-count perjury indictment against Pagnotti, who was arraigned on both indictments the next day.

On January 5, 2007, after having obtained a series of continuances, Pagnotti filed the present Motion to Dismiss the Perjury Indictment.

---

[2] Frank Pavlico was not included in this Indictment.

## II. STATEMENT OF FACTS

John Doncses was an unindicted co-conspirator and drug trafficker dealing in marijuana. Prior to his arrest in late 1999, Doncses gave unindicted co-conspirators Frank Pavlico, III, and defendant Louis Pagnotti, III, approximately $200,000 in drug proceeds for investment purposes and to disguise the nature and source of the funds. Perjury Indictment at 1. In exchange for a $20,000 fee, Pagnotti agreed to pass the funds through his coal company and return them to Doncses in order to make it look as if the coal company was paying Doncses and Pavlico a broker fee for the coal purportedly brokered by Doncses and Pavlico to a third party. Perjury Indictment at 1-2.

Pavlico received 1100 ounces of gold and an amount of silver constituting drug proceeds from Doncses, which Pavlico gave to Pagnotti, who in turn sold the gold and silver to a coin dealer in Hamburg, Pennsylvania, for approximately $400,000. Perjury Indictment at 3. Pagnotti deposited the proceeds from the sale of gold and silver into his account at the Old Forge Bank in Old Forge, Pennsylvania. *Id*. at 3.

On or about March of 2000, Pagnotti wrote a check for $150,000 of John Doncses' money from the Old Forge Bank account to an account at Fidelity

Deposit & Discount Bank in Dunmore, Pennsylvania. *Id* at 3. With this money he purchased a certificate of deposit in the amount of $150,000. *Id*. On or about August of 2000, Pagnotti transferred the $150,000 certificate of deposit from Fidelity Bank to Pavlico; Pagnotti and Pavlico then signed a promissory note characterizing the transaction as a "loan." *Id* at 3-4.

In August of 2000, Pagnotti wrote a check for $118,000 of Doncses' money from his Old Forge Bank account to a newly opened account at Wachovia Bank in Lackawanna County. *Id.* at 4. On or about August 29, 2000, Pagnotti paid Pavlico $50,000 in what he falsely characterized as "consulting fees" from the Wachovia Bank account to Pavlico Enterprises, Inc. *Id*. at 4. On or about September 15, 2000, Pagnotti again paid Pavlico $50,000 as "consulting fees" from the Wachovia account. *Id.* at 4. On or about October 6, 2000, Pagnotti paid Pavlico $16,000 as "consulting fees," also from the Wachovia account. *Id*. at 4.

On December 3, 2003, Louis Pagnotti III appeared before a federal grand jury and perjured himself, falsely telling the grand jurors that money that he had given Frank Pavlico III was a legitimate loan and/or consulting fees for work performed on his behalf by Pavlico. In fact, as Pagnotti was well aware, the money had come from John Doncses, constituted the proceeds of drug trafficking activity, had been given to Pagnotti and Pavlico for the purpose of laundering the

4

drug proceeds to create the impression that the money had been obtained from legitimate sources. From that grand jury testimony came the perjury indictment to which Pagnotti objects and for which he seeks dismissal.

III. **ARGUMENT**

A. **EACH ELEMENT OF 18 U.S.C. § 1623 PERJURY CHARGE HAS BEEN MET AND SUPPORTS THE CONVICTION AS A MATTER OF LAW**

Pagnotti argues that the Indictment failed to specifically identify a single question to which a materially false answer had been given. Instead, the Indictment simply makes a "broad allegation of perjury somewhere in a five page transcript." Defendant's brief at 5. Thus, Pagnotti argues, the perjury indictment must fall for the compound failure to ask a precise question or to obtain an unequivocal answer.

Even the most cursory reading of the perjury charge satisfies every element of the offense of perjury pursuant to 18 U.S.C. § 1623(a) is as a matter of law.[3]

---

[3]The relevant language of § 1623 is:

Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years,

5

The false statements by Pagnotti were made when he was under oath at the grand jury proceeding. Pagnotti knowingly made false statements concerning the nature of the payments he had made to unindicted co-conspirator Frank Pavlico, III. Specifically, Pagnotti characterized the payments as "loans," "consulting fees," and "commissions," when he had full knowledge that the payments represented the laundering of drug-trafficking proceeds and were not loans, consulting fees, or commissions. These statements by Pagnotti were material to the investigation because they represented the "financial transactions" that were explicitly a part of the tax and money laundering investigations against Pavlico. Perjury Indictment at 6.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an Indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Federal Rule of Criminal Procedure 7(c)(1). An Indictment need only contain those facts and elements of the alleged offense necessary to inform the accused of the charge so that he or she may prepare a defense. *United States v. Whited*, 311 F.3d 259, 263 (3rd Cir. 2002) (Indictment that did not describe victim of defendant's embezzlement in detail was sufficient

---

or both.

18 U.S.C. § 1623(a).

6

because notice of the nature of the crime charged was adequate to prepare a defense); *United States v. Middleton*, 246 F.3d 825, 841 (6th Cir. 2001) (Indictment charging tax evasion under 26 U.S.C. § 7201 sufficient because it enumerated each element to provide the defendant notice of the statute under which he was being prosecuted). In determining whether an Indictment sufficiently informs a defendant of the offense charged, courts give the Indictment a common sense construction. *United States v. Hodge*, 211 F.3d 74, 76-77 (3rd Cir. 2000) (Indictment sufficient because, under common-sense construction, it apprised the defendant of the robbery charge). This is true even if an Indictment contains a technical error or omission. *Virgin Islands v. Moolenaar*, 133 F.3d 246, 250 (3rd Cir. 1998) (Indictment for larceny sufficient though indictment used the term "theft" instead of "larceny" because both prosecution and defense focused on whether defendant had intent to steal). See *United States v. Schramm*, 75 F.3d 156, 163-64 (3rd Cir. 1996) (Indictment charging agreement to use Postal Service to evade taxes insufficient because it failed to include evasion of federal excise tax or evasion of wholesale fuel tax as additional goals of the conspiracy and thus failed to inform the defendant of the nature of the accusations against him).

The essential elements of perjury under 18 U.S.C. § 1623 are that (1) the declarant must be under oath, (2) the testimony must have been given in a

proceeding before a court of the United States (including a grand jury), (3) the witness must knowingly make a false statement, and (4) the testimony must have been material to the proof of a crime. *United States v. Whimpy,* 531 F.2d 768 (5th Cir. 1976); *United States v. Bailey*, 34 F.3d 683 (8th Cir. 1994). It should be noted that Pagnotti does not claim that the elements of the offense are not stated in the perjury charge. Instead, he alleges that the questions were vague and that the answers were ambiguous. In any case, since each element of §1623(a) is satisfied, the perjury charge is sufficient as a matter of law.

    **B.    THE QUESTIONS AND ANSWERS MADE IN TESTIMONY AT THE GRAND JURY TRIAL EXHIBIT SUFFICIENT CLARITY AND SPECIFICITY UNDER A COMMONSENSE READING**

Pagnotti's specific complaint about the perjury is that the government failed to ask "the critical question" at the grand jury trial and instead asked only "excessively vague" and "fundamentally ambiguous" questions, never pressing for an "unequivocal answer." (Def. Br. at 5-6). Pagnotti makes this allegation but does not point to a single example of either defect. The excerpted questions and answers from the testimony exhibit more than sufficient clarity and specificity based upon a commonsense reading of the Indictment. Although Pagnotti attacks the clarity of the questions, he doesn't explain why the questions are unclear.

8

("[I]t appears to be a line of questioning so vague as to be 'fundamentally ambiguous'.") (Def. Br. at 6) (internal citations omitted). Pagnotti takes issue with both the questions presented at testimony and how the questions appear in the perjury indictment; yet, he never addresses why the questions that were asked in the grand jury were vague on their face. Again, Pagnotti cites no examples to support his claim.

The questions as they were asked at the grand jury were neither vague nor vague or ambiguous. It is true that "if the prosecutor never asks the critical question and never presses for an unequivocal answer the defendant may not be convicted for false swearing," however, the government asked several critical questions and received unequivocal answers. *United States v. Serafini*, 7 F.Supp.2d 529, 538 (M.D.Pa. 1998) (citing *United States v. Slawik*, 548 F.2d 75, 84 (3d Cir. 1977)). For instance, the prosecutor showed Pagnotti a copy of a promissory note written by him and asked "Was this a loan?" to which Pagnotti responded, "Yes, sir." Perjury Indictment at 7. The question of whether or not the payment was a loan was both critical and material to the issue of whether Pagnotti had made financial transactions involving the proceeds of an unlawful activity. It was not vague because, using a commonsense reading of the transcript, it is reasonable to conclude that Pagnotti understood the meaning of "loan," since his

9

definition of the term "loan" matched the prosecutor's definition. "Some words are so common that there cannot be any ambiguity." *Serafini*, 7 F.Supp.2d at 539. The court in *Serafini* cited several cases in which it found certain words that were of such common usage as to establish a clear meaning, including, "business dealings," "dealings," "bribes," "kickbacks," "payoffs," among others. *Id.* at 539. (internal citations omitted). "Loan" and "commissions" are also words that are commonly understood, and it is reasonable to conclude that Pagnotti, a professional engineer and head of a corporation, understood the words "loan" and "commissions" in their ordinary business meanings. There is no way to misinterpret the answer of "Yes, sir." In similar fashion, the prosecutor's next question, "What was the loan for?" is neither vague nor ambiguous on its face, nor does Pagnotti make any assertion as to how such a straightforward question could be misinterpreted. Perjury indictment at 7.

It should be noted that virtually the entire discussion between Pagnotti and the Assistant U.S. Attorney was included because testimony must be considered as a whole, in context, in order to determine whether the words which were used were materially untrue. *United States v. Bonacorsa*, 523 F.2d 1218 (2nd Cir.), *cert. denied*, 96 S. Ct. 2647 426 U.S. 935 (1976). Moreover, a charge of perjury cannot be sustained by lifting a statement of an accused out of its immediate

context and giving it a meaning wholly different from that which its context clearly shows. *United States v. Paolicelli*, 505 F.2d 971 (4th Cir. 1974). For that reason, virtually the entire conversation is included in the count. A common sense reading of that entire conversation demonstrates the falsity and the materiality of the offending statements. "While a prosecutor is required to use precise questions, requisite precision can be inferred from the context....It is not essential that the prosecutor avoid pronouns or make each inquiry stand on its own without reference to the questions that precede or follow." *Serafini*, 7 F.Supp.2d at 540. The questions focused on the nature of the consulting fees. The prosecutor asked, "It basically sounds that his [Pavlico's] job was kind of a finder?" to which Pagnotti answered, "That's correct." Perjury Indictment at 11. Although an argument could be made that "finder" is a vague word, it is not vague when taken in the context of the surrounding testimony, considering that when asked about Pavlico's role in their business relationship, Pagnotti said, "Frank was more or less the finder of projects." Perjury Indictment at 8. Later, Pagnotti described three of the projects that purportedly generated the "consulting fees" he had paid to Pavlico. Perjury Indictment at 11. Thus, the term "finder" is not ambiguous in the context of the questioning. Likewise, the term "consulting fees" is not so vague as to render the questions and answers faulty. It is a common business term in

11

today's culture that establishes a clear meaning. When read in this commonsense way, a reasonable person would understand the meanings of these terms.

The questions and answers contained within the testimony from the grand jury were not vague, nor were they ambiguous. The prosecution asked several questions that elicited clearly false declarations from Pagnotti, including the questions referenced above. In any case, if Pagnotti wishes to argue the vagueness of the questions themselves, he must do so before the petit jury, and not before the district or appellate court. *Serafini*, 7 F.Supp.2d at 540 (Whether "men of ordinary intelligence could agree that the prosecutor and Frank Serafini had a mutual meeting of the minds" is "properly made before the petit jury -- not to this Court.") (citing *United States v. Reilly,* 33 F.3d 1396, 1415-18 (3d Cir. 1994)).

    **C.**     **THE PERJURY INDICTMENT IDENTIFIES WITH EXACTNESS AND WITHOUT AMBIGUITY HOW THE STATEMENTS WERE FALSE, THUS SUPPORTING A CONVICTION UNDER 18 U.S.C. § 1623**

"[A] conviction under 18 U.S.C. § 1623 may not stand where the indictment fails to set forth the precise falsehood alleged and the factual basis of its falsity with sufficient clarity to permit a jury to determine its verity and to allow meaningful judicial review of the materiality of those falsehoods." *United States v. Slawik*, 548 F.2d 75, 83-84 (3d Cir. 1977); *United States v. Tonelli*, 577 F.2d 194,

196 (3d Cir. 1978). The United States has a duty in its indictment to specify which questions produced materially false answers and the factual basis for those false answers. The indictment fulfills these requirements.

The government identified which statements were false and the factual basis for believing those statements to be false in the following paragraph of the Indictment:

> The aforesaid testimony of the defendant Louis Pagnotti III, as he then and there well knew and believed, was false in that (a) the characterization of the payments from the defendant Louis Pagnotti III to unindicted co-conspirator Frank Pavlico III as a "loan" and as "consulting fees" was a sham, intended by the defendant Louis Pagnotti III and unindicted co-conspirator Frank Pavlico III to disguise and conceal the laundering of the proceeds of an unlawful activity, that is, illicit drug trafficking; (b) the money paid to unindicted co-conspirator Frank Pavlico III by the defendant Louis Pagnotti III was neither a "loan" nor "consulting fees" nor "commissions;" and (c) the "consulting fees," "commissions," and "loan" paid by the defendant Louis Pagnotti III to unindicted co-conspirator Frank Pavlico III were in fact the proceeds of an unlawful activity, that is, money derived from illicit drug trafficking on the part of unindicted co-conspirator John Doncses.

(Sup. Indict. at 25-26). Pagnotti claims that the United States failed to identify even one question that produced a false answer, but the United States clearly identified the questions and answers that contained the terms: "loan" and "consulting fees." This references specific questions in the excerpted transcript, such as:

13

> "Can you tell me, was this a loan?"
>
> "What was the loan for?"
>
> "What was it [referring to the business activities Pagnotti conducted with Pavlico]?"
>
> "That was for services, consulting services performed from May the 1st to August 31st of 2000."
>
> "What was, for example, the $100,000 consulting fee for?"
>
> "And the $166,000 in consulting fees was him going around and saying there are these deals [such as sanitary landfill project] out there?"

Perjury Indictment at 7-12. These questions produced unequivocal answers. The United States identified within the Indictment the factual basis for why and how the given answers were false by stating that the money paid from Pagnotti to Pavlico was "neither a 'loan' nor 'consulting fees' nor 'commissions'" as Pagnotti insisted, but instead the payments "were in fact the proceeds of an unlawful activity, that is, money derived from illicit drug trafficking." (*Id*. at 13). This part of the Superseding Indictment sufficiently shows how the statements by Pagnotti were false.

Pagnotti asserts that this identification of the questions and false answers is not adequate for purposes of establishing a charge of perjury ("The Government attempts to mask its failure to ask 'the critical question' with a broad allegation of

14

perjury somewhere in a five-page transcript.") Def. Br. at 5 (internal citations omitted). However, the only thing more the United States could have done to identify the specific questions and answers would have been to draw an arrow to each line. For the purposes of this perjury indictment, identifying the statements by the false terms used (i.e., "loan" and "consulting fees") is perfectly acceptable. A person of reasonable intelligence can understand from this method the exact statements to which the United States is referring. It is true that not all of the statements in the excerpted transcript are false, but they have not been omitted from the transcript in order to provide context. Because much of the testimony centers on the payment of drug-trafficking money via checks and invoices from Pagnotti to Pavlico, some of the statements focus solely on the more technical details of these transactions. For example, the following exchange:

> "Q: We have $100,000, $50,000 and $16,000?
>
> A: That's correct.
>
> Q: $166,000 and you don't know where the other $50,000 came from or went?
>
> A: I don't know about that invoice. No."

Perjury Indictment at 10-11 is included in the transcript to show context for the overall discussion of the payments from Pagnotti to Pavlico and to show that the

prosecutor went to lengths to make sure he and Pagnotti had a mutual understanding. These answers are not technically false, and the United States does not claim that they are false; the perjury indictment includes them because they refer to the statements that contain characterizations of these payments as a "loan" and "consulting fees," identified in the perjury indictment as the false statements. Perjury Indictment at 12.

    The cases cited by Pagnotti are generic proscriptions against unclear questions and ambiguous answers. Pagnotti singularly fails to identify a single question or answer which falls within the broad categories of cases that he has cited. In fact, a common sense reading of the transcript establishes precisely the opposite proposition. The perjury count identified which questions elicited false answers. The count included the entire five-page transcript because nearly all the questions coalesced to form one false story concocted by Pagnotti, and many of the questions helped to provide the precise context. The perjury indictment specifically identified the false statements by referring to those which involved Pagnotti's characterization of the payments as "loans" or "consulting fees." The count asserted that the statements were false by providing a factual basis (that the payments were actually laundering of the proceeds of drug trafficking). The perjury indictment unambiguously identified the false statements that supported a

conviction for violation of 18 U.S.C. § 1623(a) as a matter of law. Pagnotti's claim should be rejected.

## IV. **CONCLUSION**

For the aforestated reasons, the government respectfully requests this Court to deny the defendant's Motion to Dismiss the Perjury Indictment.

    Respectfully submitted,

    THOMAS A. MARINO
    United States Attorney

    /s Gordon A. Zubrod
    GORDON A. ZUBROD
    Assistant U.S. Attorney
    228 Walnut Street
    Harrisburg, PA 17108-1754
    Phone: 717-221-4482
    Fax: 717-221-2246
    Gordon.Zubrod@usdoj.gov
    PA 20792

Dated: January 22, 2007

UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 3:CR-05-64 |
| | ) | |
| v. | ) | |
| | ) | (CHIEF JUDGE VANASKIE) |
| | ) | |
| LOUIS PAGNOTTI, III, | ) | |
| | ) | (ELECTRONICALLY FILED) |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22nd day of January, 2007, she served a copy of the attached

**BRIEF OF UNITED STATES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE PERJURY INDICTMENT PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)3(B)**

via electronic case filing and/or by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

Patrick A. Casey
Myers, Brier & Kelly LLP
P.O. Box 551
Scranton, PA 18501-0551
570-342-6100
pcasey@mbklaw.com

                                       /s/ Carol A. Manies
                                       CAROL A. MANIES
                                       Legal Assistant