UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA   )     CR. NO. 3:CR-05-64
                        )
       v.             )
                        )     (JUDGE VANASKIE)
                        )
LOUIS PAGNOTTI, III,      )
                        )     (ELECTRONICALLY FILED)
         Defendant.    )


**BRIEF OF UNITED STATES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS SUPERSEDING INDICTMENTS**

THOMAS A. MARINO
United States Attorney

GORDON A.D. ZUBROD
Assistant U.S. Attorney

# I.    PROCEDURAL HISTORY

The defendant Louis Pagnotti, III was indicted by a federal grand jury sitting in Harrisburg, Pennsylvania on February 9, 2005.  The indictment charged the defendant and co-defendant Frank Pavlico, III in Count One with conspiracy to launder drug proceeds in violation of Title 18, United States Code, Section 1956(h).  Counts Five through Nineteen[1] charged the defendant Pagnotti with substantive acts of money laundering in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i): Count Twenty charged the defendant with misprision of a felony in violation of Title 18, United States Code, Section 4; Count Twenty-one alleged an obstruction of justice in violation of Title 18, United States Code, Section 1512(c)(1); Count Twenty-two sought the forfeiture of currency and assets derived from the unlawful drug activity.

The case was initially assigned to Senior Judge Edwin M. Kosik but, on February 22, 2005, Judge Kosik recused himself from the case.   The case was reassigned to Judge Vanaskie.

On May 17, 2006, a federal grand jury returned a Superseding Indictment against Louis Pagnotti, III, which, in addition to charging him with the counts

---

[1] Counts Two through Four charged Pavlico only.

previously set forth, also charged him with a violation of Title 18, United States Code, Section 1623, perjury before a federal grand jury.

On September 20, 2006, a *Kastigar* hearing was held before Judge Vanaskie.

On October 10, 2006, undersigned counsel sent a letter to Judge Vanaskie and to opposing counsel reporting that the grand jury that had handed down the Superseding Indictment was the same grand jury that had handed down the original Indictment and that the United States would be seeking a reindictment of the defendant before grand juries that had not heard any evidence in the case.

On November 8, 2006, a second superseding indictment was handed down by a Harrisburg grand jury against Louis Pagnotti, III.[2]  The second superseding indictment charged Pagnotti with all of the offenses set forth in the original indictment handed down on February 9, 2005.  On November 14, 2006, a separate grand jury sitting in Scranton, Pennsylvania handed down a one-count perjury indictment against Pagnotti, who was arraigned on both indictments the next day.

On January 5, 2007, after having obtained a series of continuances, Pagnotti filed the present Motion to Dismiss Superseding Indictments.

---

[2] Frank Pavlico was not included in this Indictment.

## II.    ARGUMENT

In his latest effort to obtain the dismissal of the indictments against him,

Pagnotti raises four arguments in support of his claim.  He first argues both the

power and the necessity of the court to dismiss the money laundering and perjury

indictments, the reasons they should be dismissed with prejudice, need for a

second *Kastigar* hearing and the running of the Statute of Limitations as to the

superseding money laundering indictment handed down on November 8, 2006.

The United States will respond to these arguments *seriatim*.

### A.    DISMISSAL WITH PREJUDICE

Claiming that he has been prejudiced by the "repeated and intentional use"

of his immunized testimony before three separate grand juries, Pagnotti urges the

Court to exercise its supervisory powers and dismiss all of the Superseding

Indictments against him.

In support of his claim, Pagnotti first cites *United States v. Serubo,* 604 F.2d

807, 817 (3rd Cir. 1979) for the proposition that the defendant has a right to

indictment by an "unbiased" grand jury.  The apparent "bias" in this case,

addressed in Pagnotti's second argument, rests on the government's alleged use of

immunized testimony before the November 8, 2006 money laundering grand jury

and an alleged failure to employ "prophylactic" measures in the presentation of

evidence before that same grand jury. The United States would respond first, that there was no use of the immunized testimony during the November 8, 2006 grand jury and, second, the "prophylactic measures" were in fact employed by the Government.

To underscore the authority to exercise and necessity of the Court exercising its supervisory power to dismiss the Superseding Indictments, Pagnotti cites a series of cases that do not advance his claim in the least. For example, Pagnotti cites *United States v. Helstoski*, 635 F.2d 200 (3rd Cir. 1980) for the proposition that "[t]here is a difference between incompetent evidence being presented to the grand jury versus instances which was [sic] transpiring before the grand jury [which] would itself violate a constitutional privilege." Defendant's Brief at 4. In *Helstoski*, the prosecutor presented evidence to a grand jury which was protected by the speech or debate clause of the Constitution in order to secure an indictment against a congressman and his aides for a bribery scheme, the goal of which was to obtain favorable legislation for the ones paying the bribes. The District Court dismissed the indictment, finding that the testimony presented to the grand jury was a "substantial factor" underlying the indictment. *Id.* at 204. The Third Circuit affirmed, holding that the evidence presented by the Government directly contravened the speech or debate clause. *Id.* at 204. Since however, the

"speech" was only a part of the conspiracy charge, the Third Circuit concluded that the Government should not be precluded from a new trial on that count, as long as the trial was purged of the elements offensive to the speech or debate clause. *Id.* at 206. The Third Circuit concluded that "[o]bservance of this rule will not foreclose indictments for illegal conduct beyond the scope of the speech or debate clause. All that is required is that, in presenting materials to the grand jury, the prosecutor... refrain from introducing evidence of past legislative acts or [of] the motivation for performing them." *Id.* at 206 (citing *United States v. Helstoski (Helstocki I)*, 442 U.S. 477, 491, 99 S. Ct. 2432, 2431 (1979)).

*Helstoski* supports the Government's position: *Helstoki* assumed that if the case could be presented to a grand jury without reference to legislative speech or to the actions of the congressman, a prosecution could go forward. The *Helstoski* argument, in the context of the present case, begs the question: (1) If it can be shown that the Government's evidence against Pagnotti was derived wholly independently from the use immunity granted to him when he appeared before the grand jury, (2) then neither the indictment nor the subsequent prosecution should be foreclosed. In fact, when a defendant's immunized testimony adds little or nothing to the Government's information, there has been no violation of the immunization order. *Fisher v. United States*, 425 U.S. 391, 411, 96 S. Ct. 1569,

1581 (1976) (production of records pursuant to a compulsion order, although

implicitly admitting the existence and possession of the papers, adds little or

nothing to the sum total of the Government's information, since the Government

had prior knowledge of the documents' existence). As the Second Circuit noted in

*United States v. Catalano,* 491 F.2d 268, 272 (2nd Cir.), *cert. denied,* 419 U.S.

825, 95 S. Ct. 42 (1974), "in this case, the complained-of testimony was merely

repetitive of other evidence," thereby making "any improper use of the statement

highly unlikely." *Id.* at 273. In the same way, the non-inculpatory statement of

Pagnotti in the grand jury was a repetition of the non-immunized statement that he

gave seven months earlier to investigators.

Pagnotti cites four other cases where the courts dismissed for immunity

violations. These cases do not support his argument. Pagnotti first cites the case

of *United States v. North*, 920 F.2d 940, 944 (D.C. Cir. 1990). Pagnotti has

repeatedly cited this case in his briefs and the United States has repeatedly

responded that the case carries little force in the present matter since the case

simply held that a *Kastigar* hearing was required to review the testimony of

witnesses who had been exposed to the defendant's immunized testimony.

Without belaboring the issue, Lt. Colonel Oliver North had been immunized by a

Senate subcommittee and had testified in minute detail on national television as to

his role in the Iran-Contra Arms transactions.  Several of the witnesses against North had watched him testify on national television before giving their testimony at North's trial and in the grand jury.  The D.C. Circuit noted that a district judge could conclude that a particular witness' exposure to immunized testimony was so peripheral that the judge could safely find that the witness' testimony was not tainted by the exposure.  *Id.* at page 946.

In the present case, a *Kastigar* hearing *has* been held.  All of the testimony of all of the witnesses has been turned over to the court and, ultimately to Pagnotti's counsel.  The *North* case does not advance Pagnotti's claim that the District Court should exercise its supervisory powers to dismiss indictment.  In fact, a comparison of the facts leads to precisely the opposite conclusion.

Pagnotti then cites three cases, arguing that other courts have dismissed indictments for violation of a grant of immunity.  The first case cited, however, *United States v. Beery,*[3] 678 F.2d 856 (10th Cir. 1982), was not a dismissal.  The Court of Appeals remanded the case for a hearing so that the Government could be given the opportunity to prove that its sources of evidence had been properly derived from legitimate, independent sources.  *Id.* at 463.  Beery had been required to testify at a bankruptcy proceeding over his Fifth Amendment objection.  *Id.* at

---

[3] Cited in Defendant's Brief as *"United States v. Berry."*

859. One of the witnesses in the subsequent grand jury proceeding against him (for concealment of assets from the bankruptcy receiver) was the bankruptcy trustee. Since the trustee had been present at Beery's compelled testimony, a *Kastigar* hearing was required. *Id.* at 862. In other words, the fact that a person who had heard the immunized testimony had testified before a later grand jury did not operate as a bar to prosecution. It simply placed the requirement upon the Government to show that, in light of the independently acquired evidence, the error in placing the individual before the grand jury was harmless beyond a reasonable doubt. *Id.* at 860.

In the present case, no testimony was presented to the money laundering grand jury from an individual who had heard and testified about Pagnotti's testimony. Moreover, the latest money laundering indictment was presented to a grand jury that had not previously heard any evidence relating to the case. There is no harmless error analysis in this case. In fact, there was no error at all.

Pagnotti also cites *United States v. McDaniel*, 482 F.2d 305, 312 (8th Cir. 1973) as a case calling for dismissal for immunity violations. This is a case previously cited in Pagnotti's Motion to Dismiss the original Superseding Indictment. As was previously discussed in the Government's previous responsive brief, *McDaniel* provides no assistance in resolving the issues presently

before the court.  In *McDaniel*, while preparing for an indictment, a federal prosecutor read the defendant's incriminating testimony before a state grand jury, unaware that the testimony had been given before the state grand jury under a grant of a *transactional* immunity.  *Id.* at 307.  The Court held that the federal prosecutor's reading of the defendant's state testimony constituted "*prima facie* use" of it.  The case was remanded for an evidentiary hearing.  *Id.* at 308. *McDaniel* has little value to Pagnotti's case since it involved transactional immunity and is subject to a different test entirely.  The Eight Circuit ruled in *McDaniel* that use immunity placed a "heavy burden" upon the government to show that its prosecution was not tainted by that testimony.  *Id.* at 311. Transactional immunity, however, created "an insurmountable burden" to show that the prosecution was untainted.  *Id.* at 311.

Finally, Pagnotti cites the case of *United States v. Nedrow*, 1991 U.S. Dist. LEXIS 19427*53(W.D.P.A. 1991).  *Nedrow* is of little value since it deals with *equitable* immunity.  In that case, the defendant inmate contacted a state law enforcement officer and offered, in exchange for *transactional* immunity, to give evidence of his involvement in a drug trafficking ring.  *Id.* at 2.[4]  The Drug

---

[4] The page citations in *Nedrow* reference the pages as they appear in the attachment to the Defendant's Brief, not to any internal pagination in the Opinion itself.

Enforcement Administration interviewed the defendant, promising not to use the information against him. *Id.* at 2. The defendant spoke with the federal prosecutor, who said that he needed to put the defendant before the grand jury in order to make a record that would enable the prosecutor to seek a formal grant of immunity for the defendant. The defendant believing that he would be immunized, then testified before the grand jury, admitting that he knew the key players but claiming his Fifth Amendment privilege when it came to the question of whether or not he had been involved in drug trafficking with these individuals. *Id.* at 4. After the defendant had testified, the federal prosecutor told him that he (the prosecutor) would be seeking immunity for him and that they would get back to him. *Id.* at 3. Three years later, the defendant was indicted based upon his testimony in the grand jury.[5] The District Court, in reviewing the facts, found that, at the time the defendant testified before the grand jury, the prosecutor had represented to him that formal immunity would be sought for him. *Id.* at 5. The court, analyzing the case law, held that no prosecutorial misconduct had taken place. *Id.* at 7. However, the court concluded that *equitable* immunity applied

---

[5] It turns out that the case had been reassigned to a different prosecutor and the original prosecutor had failed to follow through in obtaining a grant of immunity for the defendant as he had promised or to communicate his immunity promise to the new prosecutor.

where the Government's breach was inadvertent. *Id.* at 8. Since there was no wholly independent source for the information provided by the defendant in the grand jury, the Indictment against the defendant was dismissed. *Id.* at 8.

As previously stated, *Nedrow* and the other cases do not advance the inquiry of any of the issues presently before the Court since (a) transactional and equitable immunity are not synonymous with use immunity, (b) a *Kastigar* hearing has already been held in this matter, (c) the money laundering and perjury indictments were presented to completely "untainted" grand juries, and (d) no witnesses were used that made reference to Pagnotti's immunized grand jury testimony.

Pagnotti continues to cite cases where a defendant gave truthful, incriminating testimony and that testimony was used to indict him. This is in stark contrast to Pagnotti's untruthful, non-incriminatory testimony, which was useless to investigators. Furthermore, the United Stated used information acquired prior to and independent of Pagnotti's grand jury testimony to obtain an indictment. In addition to investigators having acquired this information from legitimate, independent sources, Pagnotti himself gave a statement seven months prior to his grand jury appearance which was a virtual layover of his immunized grand jury testimony. This would render any alleged "taint" regarding Pagnotti's immunized testimony before the grand jury harmless as a matter of law. Pagnotti's testimony

added nothing new to the government's prosecution. More to the point, however, Pagnotti's argument that he should be immunized from prosecution for offenses to which the compelled testimony relates was explicitly rejected by the Supreme Court in *Kastigar v. United States*, 406 U.S. 441, 92 S. Ct. 1653, 1655, 1661 (1972). A full *Kastigar* hearing having been held, it is now time that Pagnotti's claim be dismissed.

## B.  <u>USE OF EVIDENCE AT THE NOVEMBER 8, 2006<br/>GRAND JURY</u>

Pagnotti submits as proof that his immunized testimony from the December 3, 2003 grand jury was used to obtain the second superseding indictment on November 8, 2006 excerpts of testimony taken at the December 3, 2003 grand jury. He first points to the following exchange between undersigned counsel and Special Agent Maria Grabinski of the Internal Revenue Service:

Mr. Zubrod:     Now, from whom will we be hearing today?

Ms. Grabinski:     Louis Pagnotti. As I said earlier...

Mr. Zubrod:     That's the individual that made the $150,000 loan in the year 2000 to Mr. Pavlico? Let's start with the $150,000 loan.

Ms. Grabinski:     Okay. The first item was the $150,000 promissory note dated August 25, 2000.

Mr. Zubrod:     So you found a promissory note between Mr. Pavlico and Mr. Pagnotti?

| | |
|---|---|
| Ms. Grabinski: | That is correct. |
| Mr. Zubrod: | And then also the tax return where Mr. Pavlico indicated he received $150,000 from Mr. Pagnotti? |
| Ms. Grabinski: | That's correct. We haven't been able to trace those funds, so we would like to know... |
| Mr. Zubrod: | There is no record that the money changed hands, is that right? |
| Ms. Grabinski: | Not that we have been able to determine to date. |
| Mr. Zubrod: | Other than the fact that there is a promissory note that there is going to be a loan dated what date? |
| Ms. Grabinski: | August 25, 2000. |
| Mr. Zubrod: | There is actually two tax returns indicating that the money was given. But there is no evidence of movement of money between banks for wire transfers or cash payment. |
| Ms. Grabinski: | That's correct. |

Grabinski Grand Jury testimony dated December 3, 2003 at 8-10.

Pagnotti then cites a portion of his immunized testimony on that same date:

| | |
|---|---|
| Mr. Zubrod: | Did it concern you that you might be turning over $150,000 to someone allegedly involved in organized crime. |
| Mr. Pagnotti: | I didn't turn it over to him. I didn't turn money over to Mr. D'Elia. |
| Mr. Zubrod: | You turned it over to Mr. Pavlico? |
| Mr. Pagnotti: | That's correct. |

Mr. Zubrod:  How was that transfer made?  Was this a wire transfer?

Mr. Pagnotti:  A check.

Mr. Zubrod:  Issued from what bank.

Mr. Pagnotti:  I'm sorry.  It was a CD that I had at the Fidelity Bank.

Mr. Zubrod:  Did you cash in the CD and give him cash?

Mr. Pagnotti:  No, no.  I just transferred the CD over to him.

Mr. Zubrod:  To his name?

Mr. Pagnotti:  Yes, that's correct.

Mr. Zubrod:  And this is a $150,000 CD?

Mr. Pagnotti:  That's correct.

Mr. Zubrod:  It was in the Fidelity Bank?

Mr. Pagnotti:  That's correct.

Mr. Zubrod:  Does the Fidelity Bank still hold it?

Mr. Pagnotti:  I don't know sir.  I don't know what happened to it.

Pagnotti grand jury testimony dated December 3, 2003 at 11 and 12.

Finally, Pagnotti points to the November 8, 2006 testimony of Special

Agent Grabinski:

Mr. Zubrod:  What does he do with it?

| Ms. Grabinski: | Immediately after that he takes $150,000 and purchases a CD at Fidelity Deposit and Discount Bank. |
| --- | --- |
| Mr. Zubrod: | What else does he do? Let's follow it through. What happened to that $150,000 CD? |
| Ms. Grabinski: | He purchased that in March of 2000. Subsequently he redeemed the CD and rolled it over into Frank Pavlico's name in August of 2000. |

Grabinski grand jury transcript dated November 8, 2006 at 11.

A cursory review of the transcript demonstrates the lack of substance to the allegation. In the cited grand jury testimony, Pagnotti stated a) he gave $150,000 to Frank Pavlico, b) it was in the form of a CD at the Fidelity Bank, c) Pagnotti transferred the CD over to Pavlico. Pagnotti grand jury testimony dated December 3, 2003 at 11-12. All of this was information already in the hands of the investigators at the time Pagnotti testified in the grand jury. In her testimony during the *Kastigar* hearing on September 20, 2006, Special Agent Grabinski stated that she had been in possession of the information regarding the $150,000 CD [that is, the CD purchased by Pagnotti at Fidelity Deposit Bank and turned over to Pavlico as a loan secured by a promissory note] well in advance of Pagnotti's immunized appearance before the federal grand jury in December of 2003. *Kastigar* hearing dated 9/20/06 at 111. Her information had come from several sources. First, Michael Gavigan, Pavlico's accountant, had testified that

Pagnotti had loaned Pavlico $150,000. Gavigan Grand Jury transcript dated 7/30/03 at 10. Second, Attorney Scott Schermerhorn turned over a promissory note memorializing a $150,000 loan from Pagnotti to Pavlico. *Kastigar* hearing dated 9/20/06 at 33.

All of these facts were known to investigators prior to Pagnotti's immunized grand jury testimony. Pagnotti therefore cannot successfully maintain that his immunized testimony was the source of the identification of the CD transfer, of Fidelity Deposit as the bank that conducted the transaction, and of the CD constituting the "loan" secured by the promissory note. What was *not* known was the way in which the "commissions" to Pavlico were linked to specific activities. Further, it was not known at the time what the source of the funds used by Pagnotti to make the "loan" and the "commissions" to Pavlico was. In his grand jury testimony, Pagnotti was not forthcoming as to the source of the funds.

Finally, and perhaps most significantly, the information about the CD transfer was known at the time of the search of Pavlico's business and residence in February of 2003. In the affidavit accompanying the search warrant application, Special Agent Grabinski stated the following:

> Pavlico has utilized the monies that were to be structured into the previously mentioned accounts to purchase several certificates of deposit at the Fidelity Deposit & Discount Bank. The following

schedule taken from the records of the Fidelity Deposit & Discount Bank provides the details of the transactions:

| Certificate Number | Amount | Date Opened | Date Closed |
| --- | --- | --- | --- |
| 52642 | $150,000 | 8/25/2000 | 9/27/2000 |

Government Exhibit 4 at 9, *Kastigar* hearing dated 9/20/06.

In other words, the existence of the CD at the Fidelity Deposit & Discount Bank, the date it was created and the date it was liquidated, were already known by investigators prior to Pagnotti's grand jury appearance. It was the analysis of Pagnotti's own bank records, the discovery of the coin dealer, the cooperation of John Doncses and, finally, the cooperation of Frank Pavlico that led to the evidence of the CD presented on November 8, 2006. It was not the result of Pagnotti's immunized testimony of December 3, 2003.

Pagnotti's claim that the Government learned through his immunized testimony of the $150,000 CD from Fidelity Deposit being used to make a loan to Pavlico does not withstand scrutiny. All of these facts were known by investigators prior to his immunized appearance in December of 2003. How the CD fit into the criminal scheme was not discovered until John Doncses and Frank Pavlico commenced cooperating with the United States in 2004 and 2005, respectively. Pagnotti had already faxed the promissory note establishing the loan

to the investigators on May 12, 2003. See Government Exhibit 9 from the *Kastigar* hearing. Moreover, the facts about the loan on the promissory note had been turned over prior to Pagnotti's testimony by Attorney Scott Schermerhorn. *Kastigar* hearing dated September 20, 2006 at 33. The financial analysis tracking the "paper trail" from Doncses (via the coin dealer) through Pagnotti to Pavlico had been acquired using subpoenas issued in April 2004. *Kastigar* hearing dated September 20, 2006 at 39-40. These records produced the bank accounts and the check that went into and out of the Pagnotti accounts and led to the interview of Andrew Muller, the coin dealer who cashed the coins for Pagnotti and issued checks to his account. *Kastigar* hearing Government Exhibit 13.

The statement of Special Agent Grabinski at the December 3, 2003 grand jury was taken out of context. Special Agent Grabinski testified that she had established that $150,000 (later shown to have come from the coin dealer) had been transferred from Pagnotti to Pavlico and had been characterized as a loan and accompanied by a promissory note. Furthermore, a review of Pavlico's records indicated the same promissory note (Schermerhorn records) and tax returns also indicated the receipt of the $150,000. Special Agent Grabinski was looking for evidence of the actual transfer. Grabinski grand jury testimony dated December 3,

2003 at 8-10.  Finally, Pavlico, after his arrest, acknowledged that the $150,000

transfer had taken place in the form of a CD that had been reissued in his name.

## C.  <u>PROPHYLACTIC MEASURES</u>

Pagnotti argues that the government failed to take any "prophylactic

measures" regarding the use of Pagnotti's immunized testimony.  He cites the U.S.

Attorney's Manual directing that the immunized testimony be recorded verbatim

and thereafter maintained in a secure location, both of which were done in this

case.  The only disclosure of the grand jury testimony during the investigation

with the prosecutor disclosing the testimony to the investigator, Special Agent

Grabinski and her co-investigator, Agent Wylam.  Both agents were on the 6(e)

disclosure list and were authorized to review grand jury testimony.

Pagnotti again cites cases previously used in his arguments, for example.

*United States v. Semkiw*, 712 F.2d 891 (3rd Cir. 1983).  Previously, Pagnotti used

*Semkiw* as support for his argument that the prosecutor needed to be recused since

he had been exposed to immunized testimony.  As was set forth in the

Government's Supplemental Brief in Opposition to the Defendant's Motions to

Dismiss, in that case the defendant had been granted use immunity, gave

inculpatory testimony and was later indicted.  The Third Circuit remanded for a

hearing, holding that the testimony compelled from a witness under immunity

19

must leave him and the government "in substantially the same position" as if the witness had retained his right to remain silent. *Id.* at 894. In other words, the Third Circuit directed a *Kastigar* hearing take place. That holding points to the precise facts in the case at bar, where the government learned nothing new from Pagnotti's testimony, heard no information which would have advanced its case in any way, his testimony being exculpatory. A *Kastigar* hearing was held. Both the government and the defendant were left in "substantially the same position" as if Pagnotti had not testified at all. *Id.* at 894.

Pagnotti again cites *United States v. McDaniel,* 492 F.2d 305 (8th Cir. 1973) in support of his argument, which should be rejected since *McDaniel* dealt with transactional immunity, not use, immunity. *Id.* at 307.

Pagnotti also cites *United States v. Pantalone*,[6] 634 F.2d 716 (3rd Cir. 1980). In that case, the defendant had been convicted of a RICO conspiracy to participate in a bribery scheme and of the underlying substantive offenses. *Id.* at 717. The case was reversed due to the erroneous use of rebuttal testimony. Prior to the remand, however, the defendant gave immunized testimony before a grand jury pursuant to 18 U.S.C. § 6002. His testimony related to a similar bribery scheme independent of the bribery scheme for which he had been convicted. Prior

---

[6] Cited by Pagnotti as *United States v. "Pantone."*

to retrial, the defendant moved to dismiss the indictment and to disqualify the Assistant U.S. Attorney who had prosecuted the first trial and who had conducted the separate grand jury proceedings where the immunized testimony had been taken. *Id.* at 717-18. The defendant argued that the prosecutor's "mere exposure" to the immunized testimony rendered impossible a showing by the government of the absence of indirect use of the testimony. *Id.* at 718. In essence, the defendant was seeking a *per se* rule which would require the withdrawal of a prosecutor who may have been privy to compelled testimony. *Id.* at 719. This argument was rejected by the Third Circuit, which held that *Kastigar* burden of proof required of the government was not intended to be an insurmountable barrier. The court held that to make it so would transform use and derivative use immunity into a grant of transactional immunity. *Id.* at 719. The Third Circuit held that the mere access to immunized grand jury testimony did not prevent the government from carrying its burden under *Kastigar*. *Id.* at 720. The court held *Kastigar* simply prohibited the misuse of information gained under a grant of use of immunity; it did not require that the government disregard or discard information not obtained by the immunized testimony. The Third Circuit went even further and held that the spirit of *Kastigar* counseled *against* an absolute ban against participation by a prosecutor at the trial state whenever there had been participation by that

prosecution at the grand jury stage.  *Id.* at 720.  In short, Pagnotti's argument that "mere access" to immunized information now taints the prosecution and is not supported by the cases that he cites.

Oddly, Pagnotti argues that the fact that the prosecutor explained to other witnesses that they would not be prosecuted except for perjury demonstrates a "disrespect for the rights afforded Pagnotti."  Defendant's Brief at 12.  The problem with this argument is that (a) Pagnotti was *not* told he would not be prosecuted except for perjury and (b) Pagnotti assumes that these other witnesses had the same agreement with the United States that he had, which is incorrect.

In further support of the argument for dismissal, Pagnotti points out that the agent discussed Pagnotti's testimony with the prosecutor which, since she was on the 6(e) disclosure list, she was permitted to do.  Further, the agent was given no instructions regarding the limitations of the use of Pagnotti's testimony.  *Kastigar* hearing dated September 20, 2006 at 55-56 although she testified that she only discussed the matter with those on the 6(e) list.

Finally, Pagnotti uses a rhetorical sleight-of-hand by making a compound accusation against the agent when he only has evidence relating to one of those assertions.  In his brief, Pagnotti states "indeed, the case agent discussed the testimony with other agents and read the testimony before interviewing John,

Susan and Jessica Doncses all of whom testified before the grand jury."

Defendant's Brief at 13. In actuality, the allegation that the agents in the Internal

Revenue Service (other than herself and the co-case agent Benjamin Wylam) had

any access to the immunized testimony was specifically denied by Agent

Grabinski. *Kastigar* hearing dated September 20, 2006 at 74. Furthermore,

although the agent acknowledged having read Pagnotti's testimony prior to her

interview of John, Jessica and Susan Doncses, the agent specifically denied that

she had discussed the testimony with any of the Doncses family, Frank Pavlico or

any one else. *Kastigar* hearing dated September 20, 2006 at 76, 112-113.

In short, Pagnotti's allegation that the prosecution failed to take any steps to

"can" the immunized testimony is false. Other than the knowledge of the two

agents involved in the case, the information was not disclosed until a perjury

indictment was sought in the grand jury against Pagnotti. Pagnotti has simply not

made the case for failure to take "prophylactic measures." Beyond that, however,

Pagnotti has failed to show how he or the Government were placed in any

different position as a result of his immunized testimony (aside from his perjury

prosecution). His argument should be rejected.

## D. REQUEST FOR A FULL *KASTIGAR* HEARING

Alternatively, Pagnotti renews his request for a "full *Kastigar* hearing." Defendant's Brief at 13. The United States would respond that the court did hold a full *Kastigar* hearing, where all of the testimony of all of the witnesses was presented and reviewed by the court. Morever, the witness who coordinated the entire investigation testified as to each step in the investigative process. The additional arguments raised by Pagnotti are contradicted by the documentary evidence and have been specifically refuted by the agent.

Pagnotti accuses the case agent of having told the grand jury that the financial transactions between Pavlico and Pagnotti were attempts to launder money. Since the Indictment charged money laundering and since, by that time, all of Pagnotti's co-conspirators had testified that they had in fact conspired with Pagnotti to launder money, this statement is hardly surprising. Such a statement, however, does not necessarily or inevitably flow from Pagnotti's immunized testimony. Rather, it was testified to independently by numerous individuals and by an analysis of the financial transactions themselves.

Pagnotti points to the prosecution's assertion to the grand jury that "... everybody else involved in the transaction, John Doncses, Frank Pavlico, all said No, it's a complete fraud to try and conceal the fact that we were laundering

money'."  Grabinski grand jury testimony November 8, 2006 at 20.  Again the statement is a plain summarization of the "untainted" evidence in the case. Moreover, it is a direct rebuttal of Pagnotti's non-immunized statement to investigators in May of 2003.  *Kastigar* hearing date September 20, 2006, Government Exhibit 13.

## E.  STATUTE OF LIMITATIONS

Citing 18 U.S.C. § 3282, Pagnotti argues that the superseding money laundering indictment was returned outside of the Statute of Limitations and should therefore be dismissed.[7]  Pagnotti's argument flies in the face of settled law. Once an indictment has been brought, the Statute of Limitations is tolled as to the charges in that indictment.  *United States v. Garcia*, 268 F.3d 407, 411 (6th Cir. 2001), *cert. denied*, 535 U.S. 1089, 122 S. Ct. 1985 (2002), overruled on other grounds; *United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002), *United States v. Smith*, 197 F.3d 225, 227 (6th Cir. 1999); *United States v. Sears Roebuck & Company*, 785 F.2d 777, 778-79 (9th Cir.) (collecting cases), *cert. denied*, 479

---

[7] 18 U.S.C. § 3282 provides "except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information if instituted within five years next after such offense shall have been committed."

U.S. 988, 107 S. Ct. 580 (1986); *United States v. Grady*, 544 F.2d 598, 601 (2nd Cir. 1976).

Once an indictment has tolled the Statute of Limitations, a superseding indictment that "relates back" to the previous indictment will not be barred by the Statute of Limitations if it is brought at a time when the previous indictment is still validly pending. *Smith,* at 228 (citing *United States v. Grady*, 544 F.2d 598 (2nd Cir. 1976)). A superseding indictment "relates back" as long as it does not broaden the charges alleged in the previous indictment. *Id* at 228; *United States v. Lash*, 937 F.2d 1077, 1081 (6th Cir.), *cert. denied*, 502 U.S. 1061, 112 S. Ct. 397, 943 (1991); *United States v. Pacheco,* 912 F.2d 297, 305 (9th Cir. 1990); *United States v. Schmick*, 94 F.2d 936, 940 (5th Cir. 1990), *cert. denied*, 498 U.S. 1067, 111 S. Ct. 782 (1991); *United States v. Italiano*, 894 F.2d 1280, 1282 (11th Cir.), *cert. denied*, 498 U.S. 896, 111 S. Ct. 246 (1990); *United States v. Jones*, 816 F.2d 1483, 1487 (10th Cir. 1987); *United States v. Gango*, 808 F.2d 1, 3 (2nd Cir. 1986). This is the law in the Third Circuit; *United States v. Friedman*, 649 F.2d 199, 203 (1981) (a superseding indictment is not time-barred if the timeliness of the original indictment tolls the Statute of Limitations).

In the present case, the superseding indictment matches the charges against Pagnotti in the original indictment. Where both indictments describe the same

conspiracy during the same time-frame, the superseding indictment "relates back" for the purposes of the statutes of limitations despite newly emerging allegations of additional underlying details in the superseding indictment. *Lash*, 937 F.2d at 1082; *Schmick*, 904 F.2d at 941; *Friedman*, 649 F.2d at 204.

The policy underlying this holding is that a timely indictment serves notice on a named defendant by apprising him that he will be called to account for his activities and should prepare a defense. *Grady*, 544 F.2d at 601; *Lash*, 937 F.2d at 1082; *Schmick*, 904 F.2d at 940. When charges are brought within the limitations period and continue to pend, restatement of those charges at a subsequent date without expanding or meaningfully altering them does not put a defendant at an unfair disadvantage. *United States v. O'Bryant*, 998 F.2d 21, 24 (1st Cir. 1993). Pagnotti's argument is without merit.

### III. **CONCLUSION**

For the aforestated reasons the United States requests this court to deny the defendant's motion to dismiss the superseding indictment and to permit this case to proceed to trial.

Respectfully submitted,

THOMAS A. MARINO
United States Attorney


 /s/ Gordon A.D. Zubrod
GORDON A.D. ZUBROD
Assistant U.S. Attorney
228 Walnut Street
Harrisburg, PA  17108
Phone: (717) 221-4482
Fax: (717) 221-2246
Gordon.Zubrod@usdoj.gov
PA 20792

Dated: January 22, 2007

UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 3:CR-05-64 |
| | ) | |
| v. | ) | |
| | ) | (JUDGE VANASKIE) |
| | ) | |
| LOUIS PAGNOTTI, III, | ) | |
| | ) | (ELECTRONICALLY FILED) |
| Defendant. | ) | |


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22nd day of January, 2007, she served a copy of the attached

### BRIEF OF UNITED STATES' IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SUPERSEDING INDICTMENTS

via electronic case filing and/or by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

Patrick A. Casey
Myers, Brier & Kelly LLP
P.O. Box 551
Scranton, PA 18501-0551
570-342-6100
pcasey@mbklaw.com


 /s/ Carol A.  Manies_____
CAROL A. MANIES
Legal Assistant